# 516

472 P.2d 485

**Mitzie I. SEELEY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Southwest Forest Industries, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 370.**

Court of Appeals of Arizona,
Division 1,
Department A.

July 22, 1970.

Rehearing Denied Sept. 24, 1970.

Review Denied Nov. 4, 1970.

Ward & Contreras, by Anderson D. Ward, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for The Industrial Commission of Arizona.

Stevenson, Warden & Smith, by William W. Stevenson, Flagstaff, for respondent employer Southwest Forest Industries, Inc.

Robert K. Park, Chief Counsel, Phoenix, for State Compensation Fund.

CAMERON, Judge.

This case is before the Court by writ of certiorari brought by the petitioner, Mitzie I. Seeley, to test the lawfulness of an award and findings of the Industrial Commission of Arizona denying reopening of her claim, which was issued 23 October 1969.[1]

The facts necessary for a determination of this matter are as follows. The petitioner suffered a fall from a step stool while at work on 27 July 1963. She fell in a sitting position, striking her lower spine. She stated that she could hardly get up because her back "hurt awfully bad." Her supervisor had her discontinue her regular work for the rest of that day, and just sit down and watch the customers. The petitioner continued to work, but stayed on light duty until the second Tuesday following the accident, when she testified she was no longer able to get out of bed. She then went to see her family physician, Dr. Mowrey, of McNary, Arizona, about her back. Dr. Mowrey filed an initial report of physician, diagnosing her condition as "Contusion of back—sacral and coccygeal areas." Dr. Mowrey's X days were negative for fracture or bone injury.

After conservative treatment by Dr. Mowrey, the petitioner was referred to Dr. Bishop in February 1964. Dr. Bishop conducted a physical examination of the petitioner, and made this observation:

> "Bidigital examination of the coccyx revealed it to be freely movable, and although she complained of severe pain even to the lightest touch; when her attention was distracted, the coccyx could be manipulated without her awareness."

Dr. Bishop stated in his "comments" that her subjective complaints could not be explained on an organic basis. He found no

---

1. This case was decided under the law as it existed prior to January 1, 1969.

residual effects of any injury at any time, and no findings to indicate an organic basis for her complaints. He stated that it was his opinion that her condition was stationary referable to the industrial accident, and that her case should be closed because there was obviously an extremely high functional component present. He stated that in his opinion to treat her somatic complaints on an organic basis would merely result in further fixation and further complaints.

In July of 1964, the petitioner was seen in consultation by Dr. William B. McGrath, M.D., a psychiatrist. He commented as follows:

"Comment: This kind of coccygodynia is not uncommonly refractory to treatment. And, arising in circumstances of emotional conflict, it is undoubtedly psychogenic, as presumably is also the chronic digestive disorder which she currently presents.

"The patient apparently does not intend to return to the job in which the incident of July 27, 1963, was mostly of psychological significance. So far as any effects of the fall of July 27, 1963, are concerned, it is our opinion that the patient could resume gainful occupation."

The petitioner was seen by a medical consultation board on 10 July 1964, comprised of Drs. S. L. Stovall, Howard Aidem, and Harry F. Steelman. The board also gave the petitioner a physical examination, and noted that there "appears to be a free fragment of the coccyx which moves freely and she stated that this causes pain in the pelvic area." However, these doctors commented as follows:

"Comments: From review of the history, physical examination and the X rays, it is the opinion of the consultants that this patient is not in need of any further medical treatment as an industrial liability.

"The patient should be able to resume her regular work as a clerk in a drug store. After she has been released to work for a period of 60 days it is felt that her condition will be stationary and she can then be safely discharged without permanent disability attributable to the accident of 7–27–63."

Dr. Mowrey's monthly report dated 24 July 1964 indicated that the claimant was discharged from treatment in accordance with the consultation report of 10 July 1964.

The Commission issued a temporary disability award on 2 September 1964. A notice of protest of award was filed on 21 September 1964, but the file does not disclose that this was followed by a petition for hearing. A petition for reopening was filed on 11 May 1966, which was unaccompanied by any medical report. The respondent employer moved to dismiss this petition, and an award was issued on 17 June 1966 denying the petition to reopen.

On 9 October 1968, another petition for reopening was filed accompanied by two written reports from Dr. Robert A. Johnson, M. D., the first dated 23 August 1966, and the second dated 14 October 1968. In the 1966 report, Dr. Johnson states that a coccygectomy was performed, following which the petitioner stated she was experiencing considerable relief. He concludes, "It is my opinion that the patient's residual symptomatology in the coccygeal area may have been related to the injury of July 27, 1963." The second report contains the following statement:

"In June of 1966, it was felt that she had obtained a satisfactory result and did not need any further medical treatment or observation.

"It was the initial opinion that the patient's residual symptomatology in the coccygeal area may have been related to the injury of July 7 (sic), 1963.

"The patient was seen by me recently, on August 14, 1968, at which time she complained of some difficulty with the rectum protruding through the area of the coccygectomy. Apparently she was having herniation at that area."

Dr. Johnson indicated that he had referred the petitioner to Dr. James Shaver, a proctologist, who felt that her symptom-

518

atology was most likely on an emotional basis rather than on the basis of the herniation. Dr. Johnson further states:

"Comments: In my initial examination, it was my feeling that the patient's residual symptomatology in the coccygeal area may have been related to the injury of July 7 (sic), 1963. However, the province of the coccyx and the prominence of the coccygeal junction pre-existed the injury. I have no explanation for the patient's present symptomatology, other than to concur with Dr. Shaver's conclusions."

A formal hearing was held at which Dr. Shaver and Dr. Johnson testified. We have examined the record of that hearing in a light most favorable to upholding the award of the Commission. In Re Bedwell's Estate, 104 Ariz. 443, 454 P.2d 985 (1969). It is the opinion of the Court that the award of the Commission is reasonably supported by the evidence and must be affirmed. Nickerson v. Industrial Commission, 4 Ariz.App. 372, 420 P.2d 944 (1966).

Award affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.