476 P.2d 875

**STATE COMPENSATION FUND and Norman Kyle Lewis (Norman Lewis & Sons, Masonry), Petitioners,**

v.

**Forest BANNISTER, Respondent Employee,**

and

**Industrial Commission of Arizona, Respondent Commission.**

**No. I CA–IC 323.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 25, 1970.

Rehearing Denied Dec. 18, 1970.

Review Denied Feb. 2, 1971.

Robert K. Park, Chief Counsel, State Compensation Fund by C. A. Edwards, Jr., Phoenix, for petitioners.

Michael E. Benchoff, Phoenix, for respondent employee.

Donald L. Cross, Chief Counsel, Phoenix, Industrial Commission of Arizona for respondent Commission.

DONOFRIO, Presiding Judge.

This case is before the Court by application of the State Compensation Fund for a writ of certiorari to review the lawfulness of an award and findings of the Industrial Commission issued on June 25, 1969.[1] The award complained of granted continuing medical benefits and compensation to the

---

[1]. This case was decided under the law as it existed prior to January 1, 1969.

respondent Forest Bannister, and accepted liability on the Commission for the metabolic bone disease from which the respondent suffers. This award was signed by all five Commissioners, three approving it and two disapproving it.

The respondent was injured on April 24, 1964, when he fell from a scaffolding while working for the employer at Lake Havasu City. His injury was initially diagnosed as a fracture of the right distal radius (wrist). He was treated for this injury and released in July 1964. Shortly thereafter he resumed employment in a supervisory capacity, and later resumed his employment as a bricklayer. Subsequently, on December 21, 1964, respondent was operated on by Dr. Willard Hunter for the correction of a basal neck fracture of the left femur. A petition to reopen was filed in January 1965, and a hearing was held in July 1965. The file was subsequently referred to T. H. Taber, M.D., for review. Dr. Taber was of the opinion that the fracture of respondent's left hip was related to the April 1964 accident but had not become evident until December, partly due to the respondent's high-pain threshold. The Commission accepted responsibility and issued an award finding new, additional or previously undiscovered disability in November 1965.

Prior to the industrial accident of April 1964 the respondent was in excellent health. He had suffered one prior fracture which occurred in a soccer game twenty years before, when he was 16 years of age. He had served in the United States army, and had worked at jobs involving physical activity from the date of his discharge until approximately December 1964. Subsequent to the industrial accident the respondent sustained thirty to forty spontaneous fractures. His physical stature has been reduced from six feet, two inches, his height at the date of the industrial accident, to his present height of five feet, eight inches. The respondent has been diagnosed as having "Fanconi's syndrome, associated with Vitamin D resistant rickets", which results in severe osteoporosis.

The question presented for review is whether the award and findings of the Industrial Commission is reasonably supported by the evidence.

■ This Court has stated many times that it will not substitute its opinion for that of the Industrial Commission where the Industrial Commission has resolved a conflict of medical testimony. Wones v. Industrial Commission, 7 Ariz.App. 236, 437 P.2d 988 (1968). The weight which must be accorded the Commission's findings is that they be given the same consideration as those of the jury or trial judge. In this, the Commission is the judge of the weight of the evidence, and its conclusions based on the weight of evidence will not be disturbed on appeal. The reviewing court always considers the evidence in a light most favorable to sustaining the award. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969). Our Supreme Court has stated:

" ' * * * In cases of this nature, the commission is the trier of fact, and, as we have repeatedly said, unless its conclusion is arbitrary and cannot be supported on any reasonable theory of the evidence, we are bound thereby, even if we, sitting as triers of fact, would reach a different conclusion on the evidence.' Cole v. Town of Miami, 52 Ariz. 488, 497, 83 P.2d 997, 1001." Malinski v. Industrial Commission, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968).

■ It is obvious from memorandums in the files and from the fact that the award was signed by all five Commissioners, three approving and two disapproving, that the evidence was considered by all of the Commissioners. To summarize the evidence which has been reviewed by this Court, two doctors who attended the respondent testified at hearings. They were Dr. Hunter, an orthopedist, and Dr. John P. Heileman, an internist and endo-

crinologist. Both of these doctors testified that in their medical opinion the industrial accident was the triggering factor which caused the respondent's metabolic bone disease to manifest itself. Dr. Tanz, an orthopedist, and a member of the Medical Consultation Board, testified that he, through his specialty, could not demonstrate a causal relationship between the accident and the metabolic bone disease, however he stated that perhaps an internist or an endocrinologist could do so. Dr. Taber, also an orthopedist, testified that in his medical opinion there was no causal relationship between the accident and the onslaught of the metabolic bone disease. Dr. Myers, an internist, testified that the Fanconi's syndrome with Vitamin D resistant rickets was so rare that to the best of his knowledge no cause had ever been determined. This, then, was the conflict in medical evidence which confronted the Industrial Commission. In addition, the Medical Consultation Board previously had issued a report finding that there was no causal relationship between the accident and the respondent's metabolic bone disease. However, the Consultation Board which was primarily made up of orthopedists, referred the respondent to Dr. Heileman for his investigation and opinion as to causal relationship. As we have previously stated, Dr. Heileman emphatically testified that in his opinion it was medically probable that the accident was the triggering factor.

Weight of the evidence in a medical conflict situation is not determined by the number of doctors who testify on each side. We do not find it unreasonable for the Commission to have arrived at its determination that the respondent employee sustained his burden of proving a causal relationship. Having determined this, we are required to affirm the award of the Commission.

Award affirmed.

STEVENS and CAMERON, JJ., concur.