NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NATALIE SMITH, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

HERTZ CORPORATION, *Respondent Employer*

NEW HAMPSHIRE INSURANCE CO./SEDGWICK CMS, *Respondent Carrier*

No. 1 CA-IC 13-0053
FILED 2-25-2014

---

Special Action – Industrial Commission
ICA Claim No. 20121-370338
Carrier Claim No. 30120635448-0001
The Honorable Suzanne Scheiner Marwil, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Natalie Smith, Phoenix
*Petitioner in Propria Persona*

Klein, Doherty, Lundmark, Barberich & LaMont, P.C., Phoenix
By Julie A. Doherty
*Counsel for Respondent Employer & Carrier*

_____

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

_____

**G E M M I L L,** Judge:

¶1        This is a special action review of an Industrial Commission of Arizona award and decision upon review for a noncompensable claim.  The petitioner employee Natalie Smith raises several issues on appeal: (1) whether medical testimony supporting a finding of a compensable injury was improperly disregarded by the administrative law judge ("ALJ"); (2) whether the peculiar risk and positional risk doctrines are implicated here and support a finding of a compensable injury because a supervisor was not present at the time of the incident; and (3) whether a witness's testimony should be stricken when that witness failed to intervene in the altercation that was the subject of his testimony.  For the following reasons, we affirm.

**BACKGROUND**

¶2        Beginning in March 2012, Smith worked for respondent employer Hertz Corporation as a virtual customer service representative.  On May 12, 2012, as Smith was leaving work for the day, she exchanged words with a co-worker, Mark Ardner.  Smith testified at the administrative hearing that Ardner came toward her and pushed her hard, with two hands on her right shoulder.  Smith did not fall to the ground but she testified that she stumbled hard and woke up the next morning with pain in her upper neck, right shoulder, and back.

¶3        Upon returning to work the next morning, Smith ascertained the last names of the employee involved in the incident, Mark Ardner, and a witness to the incident, Eric Woods.  She then reported the incident to the police.  After an investigation, the police took no further action because of conflicting witness accounts of the incident.

¶4        Woods testified that he is a virtual customer service representative for Hertz and described Ardner as a "great guy," who worked overtime and offered to help his coworkers.  Woods testified that as Smith was leaving work on the day in question, Ardner made a joking comment about how Smith had left work too early the night before.  Smith did not respond to the joke and said she wanted to be left alone.  Ardner proceeded to "lightly touch" her right shoulder with one hand and did not cause her to stumble.  Ardner did not testify because he had died before the hearing.

¶5        On May 14, 2012, two days after the incident, Smith was sent to Concentra for medical care, and she received pain medication, physical therapy, and a referral to Dr. Andrea Goldberg, an internist.  Dr. Goldberg performed lab work and further imaging, and ultimately referred Smith to a psychiatrist and a doctor of sports medicine.  On June 24, 2012, Smith went to the emergency room in a lot of pain, and a CT scan was performed that revealed cervical stenosis.  The emergency room doctor directed that Smith take five days off work.

¶6        Four months later, in November 2012, Smith saw Dr. Carlton Richie, a Board Certified Sports Medicine doctor.  Dr. Richie diagnosed neck pain from an on-the-job injury and later added a diagnosis of clavicle pain as well.  His conclusion that the on-the-job incident caused these injuries was based on the history Smith provided and his review of the Concentra records.

¶7        After considering the evidence, the ALJ found Woods' testimony the most credible; that Smith was merely touched on the shoulder, not pushed; and that she did not stumble or sustain any compensable injury in the incident.  The ALJ's findings also discounted the causation opinion of Dr. Richie as based on an inaccurate view of the facts.  After the ALJ affirmed her award on administrative review, Smith brought this special action.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**DISCUSSION**

¶8        In reviewing Industrial Commission of Arizona findings and awards, we defer to the ALJ's factual findings, but review questions of law de novo.  *Young v. Indus. Comm'n,* 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We also consider the evidence in a light most favorable to upholding the award.  *Lovitch v. Indus. Comm'n,* 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).  An ALJ is responsible for weighing the evidence, resolving conflicts in the evidence, and drawing any necessary and warranted inferences.  *See Malinski v. Indus. Comm'n,* 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968).  The ALJ is the sole judge of witness credibility.  *Holding v. Indus. Comm'n,* 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984).  With these concepts in mind, we address Smith's three arguments in turn.

¶9        Smith first argues the ALJ erred in discounting Dr. Richie's medical testimony of a causal connection between the incident and her injuries and symptoms. If a medical opinion is shown to rely on an inaccurate view of the facts, the ALJ can disregard it as not constituting substantial evidence.  *See Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 151, 654 P.2d 296, 299 (App. 1982).  Here, Smith told Dr. Richie

that she had sustained an injury at work, and the doctor relied upon the history presented by Smith in diagnosing neck and clavicle pain arising from that injury. His causation opinion was based on Smith's report of the event and Concentra's records, which were also based on Smith's report of the event. After deciding that Smith's version of the event was not accurate, the ALJ then logically disregarded Dr. Richie's causation opinion that was based on the unsustained history from Smith.

¶10 Smith next contends that Hertz's failure to have a supervisor on the premises during this incident supports finding a compensable injury under the peculiar risk and positional risk doctrines. We disagree. These doctrines address whether the injury arose out of the employment, an issue which Hertz does not dispute here. *See PF Chang's v. Indus. Comm'n*, 216 Ariz. 344, 347-48, ¶ 14-15, 166 P.3d 135, 138-39 (App. 2007). Instead, Hertz argues that the incident did not result in an injury. Thus, the pertinent question in this appeal is one of medical causation, not work-relatedness or legal causation. *See Grammatico v. Indus. Comm'n*, 208 Ariz. 10, 12-13, ¶ 8, 90 P.3d 211, 213-14 (App. 2004) (explaining and contrasting legal and medical causation), *aff'd* 211 Ariz. 67, 72, ¶ 23, 117 P.3d 786, 791 (2005). Because the peculiar risk and positional risk doctrines are not relevant to the disputed medical causation issue, they do not support Smith's claim.

¶11 Smith's final argument is that Woods' testimony should have been stricken because he failed to intervene in the altercation at issue. As already noted, the determination of witness credibility is the obligation and responsibility of the ALJ, who sees or hears the witnesses and is in the best position to assess a person's credibility. For these reasons, we generally defer, as we do here, to the ALJ's determination of the facts. Furthermore, Woods' failure to intervene in the incident between Smith and Ardner does not disqualify Woods from testifying and is, in fact, consistent with the observations to which he testified. Smith's argument does not present a recognized legal basis for striking witness testimony and is therefore rejected by this court.

## CONCLUSION

¶12 For the foregoing reasons, we affirm the ALJ's award of noncompensability.

