NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARIA O. MIRANDA, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

HILDA M. ALVARENGA DE PEREZ, *Respondent Employee,*

SPECIAL FUND DIVISION/NO INSURANCE SECTION,
*Respondent Party in Interest.*

No. 1 CA-IC 15-0004
FILED 4-14-2016

Special Action – Industrial Commission
ICA Claim No. 20140-710391
Carrier Claim No. NONE

JoAnn C. Gaffaney, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Montrose & Chua Attorneys of Law, PLLC, Phoenix
By Weston S. Montrose
*Counsel for Petitioner Employer*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Snow & Carpio, PLC, Phoenix
By Erica González-Meléndez
*Counsel for Respondent Employee*

Special Fund Division/No Insurance Section, Phoenix
By Afshan Peiniani
*Attorney for Respondent Party in Interest*

---

## MEMORANDUM DECISION

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

---

**G E M M I L L**, Judge:

**¶1**　　　　This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a compensable claim. On appeal, the petitioner employer, Maria O. Miranda ("Miranda") argues she was not an employer subject to the Arizona Workers' Compensation Act ("Act"). For the following reasons, we affirm the award and decision upon review.

### PROCEDURAL AND FACTUAL HISTORY

**¶2**　　　　In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶3**　　　　On January 31, 2014, the respondent employee, Hilda Alvarenga de Perez ("Perez"), fell off a ladder while cleaning window blinds and broke her left wrist. She filed a workers' compensation claim against Miranda. It was denied for benefits by the respondent party in interest, Special Fund Division/No Insurance Section ("Special Fund"). Perez timely requested a hearing, and the ALJ heard testimony from Perez, Miranda, and three other witnesses.

**¶4**　　　　After considering post-hearing memoranda, the ALJ found Perez's claim compensable, and Miranda timely requested administrative review. The ALJ supplemented and affirmed her award.

2

¶5        Miranda appeals. This court has jurisdiction in accordance with Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.

**DISCUSSION**

¶6        To be entitled to receive workers' compensation benefits under the Act, a worker must have been an employee of an employer subject to the Act at the time of the injury. *See* A.R.S. §§ 23-901(6)(b), -1021. Employers subject to the Act are defined by statute to include:

> [E]very person who employs any workers or operatives *regularly employed* in the same business or establishment under contract of hire, including covered employees pursuant to a professional employer agreement, except domestic servants. . . . For the purposes of this subsection, "*regularly employed" includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer*.

A.R.S. § 23-902(A) (emphasis added).

¶7        This court interpreted the "regularly employed" language from A.R.S. § 23-902(A) in *Donahue v. Industrial Commission*, 178 Ariz. 173, (App. 1993):

> The Legislature used the term 'regularly employed' in section 23-902(A) to refer to *whether it is in the employer's regular or customary business to employ workers*, not to whether the employee in question is performing a task in the employer's usual trade.

178 Ariz. at 176 (emphasis added). The court concluded that an employer is subject to the Act when employing at least one employee in the regular course of business. *Id.* at 179.

¶8        Miranda argues that the evidence does not support a finding that she regularly employed workers. She cites *Putz v. Industrial Commission*, 203 Ariz. 146 (App. 2002), to support her argument that she hired helpers only occasionally and unpredictably, and thus she was not an

employer subject to the Act. In *Putz*, when considering whether to use a test based on the percentage of time an employee worked, we stated:

> The purpose of the 'regularly employed' requirement – to provide employers and employees stability in knowing when an employer is subject to the Act – is not served by such a formulaic approach. . . .
> Instead . . . we return to the determinative question . . . : Did [the employer] *customarily or regularly employ at least one worker or was his hiring of extra labor only occasional and unpredictable*?

203 Ariz. at 150, ¶¶ 19-20 (emphasis added).

**¶9** In answering this question in *Putz*, we discussed *Modern Trailer Sales of Arizona, Inc. v. Industrial Commission*, 17 Ariz. App. 482 (1972). In *Modern Trailer*, the employer was a corporation engaged in the business of buying and selling trailers. 17 Ariz. App. at 484. It conducted its business from a fixed location where trailers were displayed. The corporation had two full-time salaried employees, but it also hired short-term employees up to twenty-five percent of the time to clean and transport new mobile homes and to perform yard maintenance.[1] *Id.* We recognized that in the ordinary conduct of its business, the employer "knew that on an ongoing and regular — though intermittent — basis it would require additional labor," and it was this "customary or regular use of short-term employees" that "constituted an established mode of operation" and subjected the employer to the Act. *Putz*, 203 Ariz. at 150, ¶ 21.

**¶10** Miranda testified that she cleans houses for a living and has done so for twelve years. She stated that she does not have a cleaning company, and she generally works alone. She explained that she has four regular customers whose houses she cleans once a week and four others whose houses she cleans once a month. She obtains her clients from "word of mouth," and when she gets extra work, she hires a helper.

**¶11** Miranda testified that Perez worked with her a total of four days. On the date of Perez's injury, Miranda had three helpers working with her. These were Perez, another helper, and an individual in training to replace that helper. Miranda testified that she had helpers that day

---

[1] The statutory scheme in place when *Modern Trailer* was decided provided that an employer was subject to the Act if regularly employing *three* or more workers. *See Modern Trailer*, 17 Ariz. App. at 485.

because she had been asked to clean an extra house and she needed to finish work early.

**¶12** Perez testified that she worked for Miranda, who had a house cleaning business. She was referred to Miranda by a friend who told her that Miranda "always needed help cleaning the houses." Perez said she worked for Miranda a total of six days before her injury — two days on, eight days off, and four days on. Each time she worked for Miranda, there were two other helpers present and all four of them worked together to clean the houses.

**¶13** The first day Perez worked for Miranda, they cleaned three or four houses. Miranda stated that they cleaned fewer houses the second day that Perez worked because there were only three of them cleaning that day. Perez testified that on January 31, 2014, they had already cleaned three houses before she was injured. By the time they reached the fourth house, Perez was unable to work, and she called a friend to come get her. Perez testified that while she was working for Miranda, they typically cleaned five houses per day and she never cleaned the same house twice.

**¶14** Yadira Parra testified that she cleaned houses for Miranda. She worked only when Miranda "had some appointment or . . . needed somebody else." She estimated this occurred four to six times per month. Parra stated that in January 2014, she worked for Miranda once a week. She met Perez while working for Miranda, and they worked together on four occasions. On each of those occasions, there was also another worker present, named Edy.

**¶15** The ALJ is the sole judge of witness credibility. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984). It is the ALJ's duty to resolve all conflicts in the evidence and to draw all warranted inferences. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968). On appeal, this court will not disturb an ALJ's award unless it cannot be supported by any reasonable theory of the evidence. *Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987).

**¶16** In this case, the ALJ specifically found Miranda's testimony that she only occasionally hired helpers not credible. The ALJ found that the evidence supported a determination that Miranda hired helpers on a "regular basis" and that her need for helpers was "predictable and not rare."

¶17     We defer to the ALJ's determination of credibility adverse to Miranda, and there is sufficient evidentiary support for the ALJ's conclusion that Miranda "regularly employed" one or more employees. The ALJ did not err in concluding that Miranda's hiring of extra labor was not merely "occasional and unpredictable" and that her business was thus subject to the Act. *See Modern Trailer*, 17 Ariz. App. at 486; A.R.S. § 29-902(A).

## DISPOSITION

¶18     For these reasons, we affirm the award and decision upon review.



Ruth A. Willingham · Clerk of the Court
FILED: ama